IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SONGIE ADEBIYI, ) ) Plaintiff, ) ) v. ) SOUTH SUBURBAN COLLEGE; ) AND DONALD MANNING ) Defendants. ) ) ) ) ) ) | Civil Action No. **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, the Plaintiff, Songie Adebyi, by and through counsel, and files this, her Complaint against South Suburban College, and would show unto the Honorable Court as follows:

### THE PARTIES

1. Plaintiff, Songie Adebyi, is a citizen of Frankfort, Illinois.

2. Defendant, South Suburban College is an Illinois public community college locate in South Holland, Cook County, Illinois, operated and governed under the Illinois Public Community College Act and legally known as Illinois Community College District No. 510, County of Cook, State of Illinois.

3. Defendant Donald Manning was the President of South Suburban College and upon information and belief is a resident of Will County, Illinois.

## VENUE AND JURISDICTION

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § § 1331, 1343, for the violation of Plaintiff's federal statutory rights and for violation of Plaintiff's civil rights under 42 U.S.C. § 1983. At all relevant times, Defendants acted under color of state law. Defendant, South Suburban College, is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964. This action is also brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, codified as 42 U.S.C. § 2000, *et seq.*, and the equal protection clauses of the Fourteenth Amendment, U.S. Constitution. This Court also has supplemental jurisdiction over the state claims herein under 28 U.S.C. § 1367.

5. Venue is properly established before the Court pursuant to 28 U.S.C. § 1391 as the Defendants are located in, and the Plaintiff's claims occurred or accrued in, Cook County, Illinois which is in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff timely filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), and has received a notice of the right-to-sue from this agency. A copy of the right-to-sue letter is attached hereto as Exhibit "A." In addition, Plaintiff is filing this original suit with the required time frame of the Notice of the Right to Sue.

## FACTS

7. Plaintiff incorporates by reference, as set forth herein, the allegations set forth in each preceding paragraph and further alleges as follows:

8. Plaintiff, an African-American female, was hired in April 2000, as a Vice President of Student Development. She is highly qualified for the position based on her years of experience, certifications, accomplishments and excellent work record during her tenure.

9. South Suburban College (hereinafter referred to as "College") is a small community college with an enrollment of approximately 11,000 students. South Suburban College contains a campus plagued with acts of racial discrimination involving both students and minority teachers.

10. Plaintiff worked in this environment for nearly 18 years without any negative marks concerning her employment history.

11. In or around 2014, began working under President Donald Manning.

12. On or about October 2017, Plaintiff complained about the racial discrimination suffered by Hiyam Yuesf at the College to Don Manning. Shortly thereafter, President Don Manning retaliated and denied Plaintiff pay stipends inconsistent with his previous representations that the same should have been provided to Plaintiff.

13. Then, in January 2018, Manning further retaliated by reducing Plaintiff's

job duties to justify depriving her of these amounts.

14. Manning and the South Suburban School Board (hereinafter referred to as "SSCB") took no action against those non-African-Americans who made even baseless claims of race discrimination. Specifically, there were no deductions of pay nor any other adverse actions taken against non-African Americans, including, those who made race claims against Plaintiff even after they were proven untrue.

15. On or about February 2018, Plaintiff also learned that non-black employees with comparable job titles and a similar workload to Plaintiff, were paid substantially more than Plaintiff.

16. On April 18, 2018, Plaintiff took medical leave due to Defendant's actions after having provided the requisite notice to Defendants and having received a diagnosis of multiple medical stress manifestations.

17. On May 1, 2018, Plaintiff informed Manning of an internal complaint by Plaintiff for racial discrimination against him, and others.

18. In response, Manning took the bizarre action of hijacking the normal complaint process and elected to investigate the matter himself. Ultimately and obviously, Manning cleared himself of any wrongdoing.

19. On May 2, 2018, Plaintiff returned from medical leave.

20. On May 17, 2018, Plaintiff filed a complaint with IDHR regarding the discriminatory practices of both Defendants (Manning and SSSB). Shortly thereafter, on May 30, Plaintiff's wages and stipends were further reduced, bonus and raise

opportunities eliminated, and she was excluded from organizational meetings material to her job duties by President Manning.

21. On or about September 2018, Plaintiff was further harassed by Manning as her office was raided and her personnel files hacked without any consequence to anyone. When Manning was informed of this action, he declined to investigate the matter and the board rubber stamped that decision as well.

22. Ultimately, this retaliatory action continued and Plaintiff's personal computer files were copied, duplicated, and then placed on a shared server.

23. On or about February 11, 2019, Plaintiff was baselessly terminated.

24. Although Plaintiff was not terminated based on her performance, she still was not allowed to finish her contract unlike her non African-American counterparts who were allowed to finish their contracts even if the SSSB nonrenewed the same. Defendants have not taken any of these adverse actions against similarly situated employees of a different race.

25. Ultimately, Plaintiff was replaced as a Vice President by a white female.

26. In short, the SSSB was repeatedly deliberately indifferent to Plaintiff's adverse employment actions suffered based on Plaintiff's race.

**COUNT ONE**
**South Suburban College's Violation of Title VII-Racial Discrimination**

27. Plaintiff incorporates by reference, as set forth herein, the allegations set forth in each preceding paragraph and further allege that Defendant (South Suburban College) is liable for violation of Title VII for the following reasons:

28. Plaintiff is an African-American female protected under Title VII. She was well-qualified for her position within the South Suburban College.

29. As shown herein, Defendants discriminated against Plaintiff and treated her less favorably than similarly-situated non African-American (Caucasian) employees and caused her to suffer adverse employment actions. Defendant Manning engaged in a pattern of wrongful and discriminatory conduct that was known and ratified or agreed to by the South Suburban School Board. Manning, was the final policy maker with respect to pay stipends, investigatory appeals, additional compensatory opportunities, and organizational meetings.

30. The SSSB took no steps to intervene just as it ignored complaints of Plaintiff and others. In addition, the board set the tone and direction for these incidents of the deprivation of Plaintiff's rights by approving, ratifying, and condoning these constitutional violations by failing to discipline, hold accountable, or even investigate allegations of misconduct levied against Manning or his subordinates for such deprivations.

31. Similarly situated Caucasian teachers were not disciplined, investigated, or fired for more egregious nor were the terms and conditions of their employment negatively impacted.

32. This racially discriminatory hostile work environment and disparate treatment by Defendants Manning and SSSB was so pervasive and consistent that it was a pattern and practice of South Suburban College, and it knew or should have known about it. Each defendant failed to train or supervise their subordinates which caused the deprivations of the constitutional rights discussed in this Complaint and they were deliberately indifferent to the violations of these rights despite the systematic and widespread examples of such violations throughout Manning's tenure.

33. Due to the Defendants actions, Plaintiff worked in an abusive and hostile work environment that made her employment intolerable. Manning and SSSB, as final policymakers, denied Plaintiff fair pay and discriminated against Plaintiff on the basis of her race which cause psychological and emotional distress that is ongoing

34. Defendants have collectively violated Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981, as a result of their disparate treatment, racially abusive and hostile work environment, and intentional discrimination against Plaintiff in the terms and conditions of her employment due to her race. This wrongful conduct has caused Plaintiff's damages in the form of lost wages and benefits, mental anguish and emotional distress, and other economic and non-economic damages addressing Plaintiff's wrongful deprivation of all the benefits and privileges of employment.

35. Defendants willfully and maliciously perpetrated the foregoing intentional discrimination, and/or acted wantonly and with reckless disregard to their wrongful actions.

As such, an award of punitive damages is also requested. Pursuant to Title VII, Plaintiff also requests an award of all attorney's fees and costs.

### COUNT II
**South Suburban College's Violation of Title VII-Retaliation**
42 U.S.C. § 2000e-3(a), 42 U.S.C. 42 U.S.C. § 2000e-5(f)(3)

36. Plaintiff incorporates by reference, as set forth herein, the allegations set forth in each preceding paragraph allege that South Suburban College is liable for violation of this separate provision of Title VII and for the following reasons:

37. Plaintiff engaged in protected activity that included, but is not limited to, complaining to Defendants about racial discrimination. Each of the defendants Manning and SSSB both retaliated against Plaintiff through adverse actions that were within the purview of their policy making authority following her aforementioned complaints about the custom of racist policies and actions within the College. Moreover, after Plaintiff reengaged in protected in activity by filing an EEOC charge alleging racial discrimination on or about May 17 2018, Manning and subsequently the SSSB ignored the subject complaints and escalated retaliatory actions as described herein.

38. Prior to the subject complaint in May 2018, the College had retaliated against Plaintiff, including but not limited to, when Manning reduced her pay based on her

complaints of discrimination. Defendant had also retaliated against Plaintiff by, *inter alia*, undermining her relationships with co-workers; raiding her offices, and sharing her personnel information across public servers. These adverse employment actions materially and adversely changed Plaintiff's overall terms and conditions of employment.

39. Defendants' retaliatory acts against Plaintiff were a direct and proximate result of her protected activities.

40. A reasonable employee would find Defendants' retaliatory acts materially adverse and such acts would dissuade a reasonable person from making or supporting a charge of discrimination.

41. Defendants' conduct has been intentional, deliberate, willful, malicious reckless, and conducted in callous disregard to Plaintiff's rights, entitling her to punitive damages.

42. Defendants' actions and failures to act have caused Plaintiff to suffer harm, including without limitation lost earnings, lost benefits and other severe financial losses, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

43. Plaintiff is therefore entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

44. Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT III**
**Manning' and South Suburban Colleges' Race Discrimination**
**Based on 42. U.S.C. § 1981 Under § 1983**

45. Plaintiff incorporates by reference the factual allegations set forth in preceding paragraphs, and asserts violation of 42 U.S.C. § 1981 against each Defendant and further allege as follows:

46. Plaintiff is a member of a protected class, namely African-American female.

47. At all times relevant, Plaintiff was in a contractual relationship with Defendants SSSB, and Manning purposefully discriminated against her because of her race.

48. Contained with the Personnel Policy Manual, Plaintiff was protected via contract from discrimination through policies and practices with respect to compensation, terms or conditions of employment because of an individual's race, color, ethnic, or national origin, religion, gender, height, weight, age, marital status, political beliefs disability, or handicap which does not impair an individual's ability to perform adequately in that individual's particular position or activity. The SSSB interfered with this provision as well the provision that states it will not tolerate behavior that interferes with the employee's work performance or which creates an offensive, or hostile work environment based on the aforesaid acts.

49. During the course of Plaintiff's employment, Defendants SSSB and Manning violated Plaintiff's rights by depriving Plaintiff of her right to the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's employment contract as is enjoyed by White employees, in violation of 42 U.S.C. § 1981(b).

50. During the course of Plaintiff's employment with Defendant SSSB, Plaintiff did not enjoy the same benefits, privileges, terms, and conditions of employment as did White employees.

51. Defendants' treatment, practices and policies directed toward Plaintiff, as more fully described in this complaint, denied Plaintiff the full and equal benefits of all laws and proceedings for the surety of persons and property as is enjoyed by White citizens, in violation of 42 U.S.C. § 1981.

52. Defendants' treatment, practices and policies directed toward Plaintiff denied Plaintiff the right to make and enforce contracts, as enjoyed by White citizens, in violation of 42 U.S.C. § 1981.

53. Through its actions and treatment of Plaintiff, Defendants intended to discriminate against Plaintiff on the basis of her race.

54. Plaintiff asserts that the intentional discrimination committed by Defendants interfered with her contractual rights in violation of 42 U.S.C. § 1981(c) and the case law supporting such a claim and seeks redress for these violations of Title VII and 42 U.S.C. § 1981 pursuant to the remedies provided under 42 U.S.C. § 1983.

55. Plaintiffs assert that both Manning and SSSB constitute policy makers under 42 U.S.C. § 1983. Upon information and belief, the Board which was originally the ultimate policy maker, has delegated to President Manning, the authority to make policy concerning all personnel matters within this Complaint such as the issuance of pay stipends, opportunities for additional compensation, and personnel investigations. Upon

information and belief, SSSB, through its board have committed both its own discriminating practices, policies, and customs and has adopted and/or intentionally acquiesced in the discriminatory practices, polices, and customs through their adoption of Manning's s retaliatory and discriminatory conduct, including those against Plaintiff.

56. For these discriminating practices, customs, individual decisions, and policies enacted by Defendants, Plaintiff seeks redress through 42 U.S.C. § 1983.

The discrimination of Defendants Manning and SSSB affected benefits and privileges of her employment contract with the College.

57. Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

## COUNT IV
## South Suburban's Breach of Contract

58. Plaintiff readopts and reasserts all allegations set forth in the preceding paragraphs and asserts the following against South Suburban College:

59. The College, furnishes all of its employees a manual of its' policies and procedures, entitled Board Policy Manual. This manual sets forth specific procedures and terms to be followed by Defendants in regards to, among others, employment decisions and the terms and conditions of employment.

60. Defendants owed a Plaintiff a duty to comply with the SSSB's own policies procedures specifically provided for in the subject manual during the relevant school years upon which Plaintiff was employed including (2008-2019). The SSSB failed to comply with its own policies, however.

61. Contained with the Personnel Policy Manual, Plaintiff was protected via contract form discrimination through policies and practices with respect to compensation, terms or conditions of employment because of an individual's race, color, ethnic, or national origin, religion, gender, height, weight, age, marital status, political beliefs disability, or handicap which does not impair an individual's ability to perform adequately in that individual's particular position or activity. The SSSB interfered with this provision as well the provision that states it will not tolerate behavior that interferes with the employee's work performance or which creates an offensive, or hostile work environment based on the aforesaid acts.

62. Defendant's failure to follow the specific terms of the SSSB's employee manual as well as the constructive discharge renders them liable to Plaintiff for breach of contract.

63. Defendant's breaches caused Plaintiffs lost wages and benefits, attorneys' fees, mental distress and emotional anguish and other damages.

64. Defendant's breaches were intentional, or constituted gross negligence, malice, and or reckless disregard for the rights of Plaintiffs' thus Plaintiff is entitled to punitive damages in addition to actual damages.

## **DAMAGES**

65. Plaintiff reincorporates all of the preceding paragraphs by reference.

66. Plaintiff is entitled to an award of attorney's fees and costs, as pursuant to Title VII, 42 U.S.C. § 2000, et seq., and pursuant to 42 U.S.C. § 1983, § 1988 and the following categories of damages:

(a) Past and future lost wages and benefits, including back pay, fringe benefits, and other economic damages;

(b) Mental anguish and emotional distress;

(c) Damages to Plaintiff's personal reputation, pain and suffering, humiliation and embarrassment;

(d) Actual and compensatory damages;

(e) Incidental and consequential damages;

(f) Punitive damages;

(g) Interest damages as allowed by law;

(i) A permanent injunction enjoining Defendant SSSB, its officers, agents, employees, and attorneys and all persons in active concert or participation with it, from engaging in racial discrimination or from discriminating on the basis of race.

(j) An order that SSSB institute and carry out policies and practices and programs which provide equal employment opportunities for African Americans and which eradicate the effects of past and present unlawful employment practices, including enforcement of the aforementioned consent decree.

(j) Award such other relief to which Plaintiff may be entitled under law and in equity

WHEREFORE PREMISES CONSIDERED, Plaintiff, Songie Adebyi respectfully moves this Honorable Court for a trial by jury and to enter judgment in favor of Plaintiff against Defendants, South Suburban College and Don Manning, in both his official and individual capacity, in an amount as may be determined by the jury to fully compensate Plaintiff for all actual and punitive damages, plus pre-and post-judgment interest, attorneys' fees and all costs incurred in filing and prosecuting the subject action, and for such other and further relief as the Court deems just and proper.

Respectfully submitted this the 30th day of March, 2020.

/s/ Volney Brand
Brand Law PLLC
3626 N Hall Ste 610
Dallas, Tx 75219
volney@brandlaw.us.com
Telephone: 214-932-1472
Fax: 214-932-1473